IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMS, LLC,

                                                                                      OPINION and ORDER

                         Plaintiff,

                                                                                       14-cv-119-bbc

       v.

BEAR ARCHERY, INC.,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff AMS, LLC and defendant Bear Archery, Inc. are competitors in what plaintiff describes as a two-party market for bowfishing arrow slides and stops. In the early 2000s, plaintiff developed a bowfishing tethering system that prevented the tether from tangling with the bowstring and secured U.S. Patent No. 6,517,453 (the '453 patent) to protect the invention. In 2013, defendant notified plaintiff of its intent to make and sell slide attachments and bowfishing arrows, which plaintiff fears will capture an increasing market share from plaintiff. Plaintiff contends that defendant's products infringe the '453 patent, and it has filed a motion to preliminarily enjoin defendant from selling them. Dkt. #11. Plaintiff's motion will be denied because there is a substantial question with respect to defendant's intervening rights defense and because plaintiff has failed to show that defendant's other defenses lack substantial merit or that it will be irreparably harmed if an injunction is not issued.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

Plaintiff AMS and defendant Bear Archery manufacture and sell bowfishing equipment. In the early 2000s, plaintiff developed a new bowfishing tethering system that uses a slide and stop attachment to prevent the bowfishing line from becoming tangled with the bow string. In 2001, the inventor, Jack LaSee, filed an application for what later became U.S. Patent No. 6,517,453 (the '453 patent). Dkt. #14, exh. 4. That patent was issued on February 11, 2003. Id. On February 28, 2011, LaSee assigned the '453 patent to AMS. Dkt. #14, exh. 2.

The specification of the '453 patent explains that attaching a bowfishing line to the tail of an arrow can prove dangerous, particularly if the line tangles with the bowstring during release of the arrow, resulting in a snap back of the line that can propel the arrow back at the fisherman. Dkt. #14, exh. 4 at col. 1, ln. 23-28. Attaching the line to the front of the arrow presents a different problem: the drag of the line can cause the arrow not to fly true to its target. Id. at col. 1, ln. 34-37. To prevent these problems, the patented system attaches a tethering line to a slide. The shaft of the arrow passes through the center of the slide, which moves freely along the length of the arrow shaft. The slide is positioned in front of the arrow rest and bow handle when the arrow is placed in the shooting position. When the arrow is released, it passes through the slide until the slide hits the stop affixed to one

side of the arrow shaft. This system keeps the tethering line at a safe distance from the bowstring when the arrow releases but slides to the rear of the arrow during release to reduce the negative impact on the arrow flight.

Soon after developing the new tethering system, plaintiff commercialized its product and began selling individually packaged slides and stops as well as fully configured arrows featuring the patented system. Cindy Braun, plaintiff's chief executive officer, claims that plaintiff secured 100 percent of the market for bowfishing slides and stops. In addition to selling its own branded tethering systems and arrows, plaintiff also has supplied its slide and stop kits to competitors, including defendant. In 2012, plaintiff supplied 30,000 slide and stop kits to Cajun Bowfishing (a company purchased by defendant in late 2012). In 2013, plaintiff supplied 49,000 slide and stop kits to defendant.

In 2012, defendant stopped buying slide and stop kits from plaintiff and decided to make and sell its own tethering system. On August 13, 2013, defendant sent a letter to plaintiff disclosing a slide and stop arrangement that it was proposing to make. Defendant requested a royalty-free license, indicating that it did not believe that its product would infringe plaintiff's patent and that it had uncovered prior art that would invalidate certain claims of plaintiff's patent. Because plaintiff had no interest in granting a royalty free license, in September 2013, it initiated an ex parte reexamination at the United States Patent and Trademark Office relating to the prior art identified by defendant. '453 patent reexamination certificate.

Defendant began selling its slides and stops in October 2013. Dkt. #17, exh. 1 at ¶ 7. In orders dated November 8, 2013 and December 3 and 19, 2013, defendant purchased approximately 9,000 two-passage slides and 2,000 five-pack slide packages from its supplier. Id., ¶ 8; dkt. #19, exh. 2. On December 18, 2013, the patent examiner issued a Notice of Intent to Issue Ex Parte Reexamination Certificate, indicating an intent to amend claim 7 and add claim 30. On January 10, 2014, defendant purchased approximately 20,000 two-passage slides. At that time, it did not know that the patent office had issued a reexamination certificate on the '453 patent on the same day. Id., ¶ 9. After learning that the certificate had been granted, defendant voluntarily ended the manufacture of its two-passage slides and ended sales of those slides that were purchased after January 10, 2014. Id., ¶ 12. However, defendant claims that it would be difficult for it to design and manufacture a new stop between now and the end of bowfishing season given the amount of time it takes for retooling and production. Id., ¶ 17. (Bowfishing is a seasonal sport, lasting from approximately May through July.)

The reexamination certificate canceled or amended some of the original patent claims and added nine new claims. Dkt. #14, exh. D at 10. Claim 7 was revised as follows (deleted language appears in brackets and new language appears in italics):

7. A bowfishing bow and arrow, comprising:

a bow with a handle and a bowstring;

an arrow with a shaft with a point at its far end;

a *plastic* slide entrained on the arrow shaft to allow the slide to slide on the arrow shaft, *the slide providing a unitary body adapted to be formed by molding and*

4

> *having a central bore for receiving the shaft of the arrow to slide therealong and two passages on opposite sides of the central bore to receive a bowfishing line therethrough to attach the bowfishing line to the slide, wherein the slide is substantially free from obstruction between the two passages that would prevent the bowfishing line from passing freely through each of the two passages across a body of the slide to be tied to itself and, as tied, to slide with respect to the plastic slide so that the bowfishing line may true on the center of flight of the arrow to reduce torque on the arrow which might alter its flight; a slide stop at a near end of the arrow to restrain farther travel of the slide on the arrow;* and
>
> a line attached to the bow at one end and attached to the slide at the other end *passing through the two passages and tied to itself*, the slide being adapted to [remaining] *remain* in front of the bow handle and the bow string at all times when the bow is drawn to minimize the chances of tangling the line with the bowstring.

Claim 30 is a new claim that discloses the following:

> 30. A bowfishing bow and arrow, comprising:
>
> a bow with a handle and a bowstring;
>
> an arrow with a shaft with a point at its far end;
>
> a slide entrained on the arrow shaft to allow the slide to slide on the arrow shaft; and
>
> a line attached to the bow at one end and attached to the slide at the other end, the slide being adapted to remain in front of the bow handle and the bow string at all times when the bow is drawn to minimize the chances of tangling the line with the bowstring;
>
> further including a slide stop projecting radially from only one side of the arrow shaft at a rear of the arow as is adapted to avoid interference with an arrow rest or bow handle and wherein the slide stop provides a resilient pad of material attached to the arrow shaft with a fastener having a fastener shaft extending radially into the arow shaft.

On February 18, 2014, plaintiff filed suit in this court, alleging that defendant's slide attachments and bowfishing arrows infringed claims 7 and 30. Dkt. #1. In light of

plaintiff's previous sales to defendant, Braun (plaintiff's CEO) believes that defendant will make and sell at least 49,000 units a year going forward and capture a significant share of plaintiff's market for slides and stops.

On March 14, 2014, defendant wrote plaintiff, renewing its request for a royalty-free license and outlining its defenses related to intervening rights and invalidity. Dkt. #14, exh. 1. In the alternative, defendant assured plaintiff that it could use "simple non-infringing alternatives" to the inventions disclosed in claims 7 and 30. Id. at 5. Defendant stated that it had the tooling for a slide and could transition to one with only one passage for the bowfishing line, which would avoid the requirements of claim 7. It stated that "[i]f necessary, Bear Archery will transition to using the new slide after its current inventory [of the infringing slide] is exhausted." Id. Defendant also indicated that a slide stop that surrounds the arrow shaft would avoid claim 30's requirement that the stop extend from only one side of the shaft. Id.

OPINION

"When a patentee sues an alleged infringer for patent infringement and, for the purpose of immediately preventing further alleged infringement, moves under 35 U.S.C. § 283 for the extraordinary relief of a preliminary injunction, the patentee's entitlement to such an injunction is a matter largely within the discretion of the trial court." Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375 (Fed. Cir. 2009). The four factors courts must consider are well-established. A plaintiff must show "[1] that he is likely to

succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Id. at 1375-76 (quoting Winter v. Natural Resource Defense Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008)). "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." Altana Pharma AG v. Teva Pharmaceuticals USA, Inc., 566 F.3d 999, 1005 (Fed. Cir. 2009). Irreparable harm is presumed when a clear showing of patent validity and infringement has been made. Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001) (internal citations omitted).

### A. Likelihood of Success on the Merits

"A patent holder seeking a preliminary injunction bears the ultimate burden of establishing a likelihood of success on the merits with respect to the patent's validity." Altana Pharma, 566 F.3d at 1005. In order to demonstrate a likelihood of success on the merits, a plaintiff must show that, "in light of the presumptions and burdens that will inhere at trial on the merits," (1) it will likely prove that the defendant infringes the '453 patent; and (2) its infringement claim will likely withstand the defendant's challenges to the validity and enforceability of the patent. Amazon.com, 239 F.3d at 1350-51.

Defendant has focused its response to the preliminary injunction on three defenses, arguing that (1) it has intervening rights with respect to amended claim 7; (2) newly added

claim 30 violates the written description requirement; and (3) claim 30 is invalid as obvious in view of three pieces of prior art. The Court of Appeals for the Federal Circuit has held that if defendant raises a "substantial question" concerning either infringement or validity by asserting a defense that plaintiff cannot prove "lacks substantial merit," the preliminary injunction should not issue. Id.; Titan Tire Corp., 566 F.3d at 1378-79.

Plaintiff has not met its burden with respect to claim 30 because it has failed to respond to all of defendant's arguments related to invalidity and the written description requirement. In its brief in support of its motion for a preliminary injunction, plaintiff addresses defendant's assertion that United States Patent No. 5,553,413 (the Gannon reference) invalidates the '453 patent as obvious. Dkt. #12, at 14-15. (Defendant had raised this argument in its March 2014 letter to plaintiff.) In response, defendant renewed its obviousness defense, asserting not only Gannon but also United States Patent No. 5,496,041 (the Broussard reference), noting that it had identified and explained the Broussard reference in detail to plaintiff in its March 2014 letter. Dkt. #17, at 13-14, 19. On May 6, 2014, plaintiff filed a motion for leave to file a reply brief "to briefly address the intervening rights and invalidity arguments raised in Defendant Bear Archery, Inc.'s Opposition," dkt. #20, which I granted on May 30, 2014. Dkt. #24. However, when plaintiff filed its reply on June 4 2014, it made no further mention of the obviousness or written description defenses that defendant had raised with respect to claim 30. Thus, for the purposes of the motion for a preliminary injunction, plaintiff has conceded that claim 30 is obvious in view of Broussard and that claim 30 violates the written description

requirement. Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) (citing cases) ("Failure to respond to an argument—as the Bontes have done here—results in waiver.").

I also find that plaintiff has not shown a lack of substantial merit in defendant's intervening rights defense with respect to claim 7. The doctrine of intervening rights, which is codified at 35 U.S.C. § 252, "first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left 'the door . . . open for gross injustice' where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." Marine Polymer Techs., Inc. v. Hemcon, Inc., 672 F.3d 1350, 1361 (Fed. Cir. 2012) (quoting Sontag Chain Stores Co. v. National Nut Co., 310 U.S. 281, 293–95 (1940)). Section 252 provides for two types of intervening rights: (1) "absolute intervening rights" that abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue; and (2) "equitable intervening rights" that apply as a matter of judicial discretion to mitigate liability for infringement even for products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue. Id. The doctrine has since been extended by statute to reexaminations. Id. (citing 35 U.S.C. §§ 307(b), 316(b)).

Defendant contends that it has intervening rights with respect to 11,000 two-passage slides that it purchased in November and December of 2013 and 20,000 two-passage slides that it purchased on January 10, 2014, before it knew that plaintiff's reexamination certificate had been issued on that day. It also states that it has intervening rights with

9

respect to its stops, which were disclosed in claims 7 and 30 only after reexamination. In its reply brief, plaintiff challenges only defendant's assertions that it has intervening rights to continue selling the 20,000 slides purchased on January 10 and its stops.

Plaintiff denies that defendant has absolute intervening rights with respect to the slides because defendant has failed to show that it actually made the slides before the reexamination certificate was issued on January 10, 2014. Plaintiff is correct, leaving defendant with an equitable intervening rights defense. Plaintiff contends that defendant's "unclean hands" prevent it from claiming equitable intervening rights in the slides because defendant was well aware of the reexamination proceeding and the patent office's intent to allow an amended claim 7 and new claim 30 at the time it ordered the infringing slides. Shockley v. Arcan, Inc., 248 F.3d 1349, 1361 (Fed. Cir. 2001) (where defendant found liable for willful infringement, court found "[b]ecause [defendant] did not have clean hands, the district court did not abuse its discretion in declining to exercise its equitable powers on [defendant's] behalf."). In other words, plaintiff is accusing defendant of stocking up on infringing slides at the eleventh hour so that it may sell them for the 2014 season.

Although I agree with plaintiff that a defendant's "unclean hands" is a factor to be considered in determining whether defendant is entitled to equitable intervening rights, plaintiff has failed to develop its argument that defendant had unclean hands in this case. First, Shockley is not directly on point because it involved more egregious conduct on the part of defendant, which was found liable of willful infringement. Second, even though the patent examiner in this case notified the parties of his *intent* to approve the amendments to

claim 7, that decision did not become final until January 10, 2014. Because the patent examiner could have made further changes to claim 7 before issuing a final reexamination certificate, defendant did not necessarily act with unclean hands in ordering slides that allegedly infringe amended claim 7. 35 U.S.C. § 307(b) (providing that surrender of original patent takes effect when amended or new claims "determined to be patentable" and are "incorporated into" patent following reexamination). As a result, plaintiff's mere accusation that defendant had a bad motive in ordering the slides is insufficient to show unclean hands.

Finally, "[t]he inquiry as to whether equitable intervening rights should apply is a fact intensive one, involving consideration of numerous issues." Marine Polymer Technologies, Inc. v. HemCon, Inc., 659 F.3d 1084, 1095 (Fed. Cir. 2011), vacated, 475 F. App'x 315 (Fed. Cir. 2012). "For example, some relevant factors include: 1) whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product; 2) whether there are 'existing orders' for the products; 3) whether the accused infringer made 'substantial preparation' to manufacture the products before the reexamination or reissue; and 4) whether the accused infringer relied on the original patent scope in making these preparations." Id. (citing Seattle Box Co. v. Industrial Crating & Packing Inc., 756 F.2d 1574, 1580-81 (Fed. Cir. 1985)). Plaintiff has failed to discuss any of these factors in the context of intervening rights, whereas defendant has made at least a colorable showing that the slides it ordered in January 2014 satisfy the standard.

With respect to the allegedly infringing stops that defendant purchased on or before January 10, 2014, plaintiff suggests in its reply brief that because defendant was able to

11

design a new slide for which it could obtain tooling by March 4, 2014, it could have made such an undertaking for the infringing stops. However, this is speculation on plaintiff's part. In fact, defendant's president has averred that it would be difficult for defendant to design and manufacture a new stop between now and the end of bowfishing season, given the amount of time it takes for retooling and production. As a result, I am persuaded that a substantial question exists as to defendant's entitlement to an intervening rights defense with respect to the stops as well as the slides.

B. Irreparable Harm

Even if I am incorrect about there being a substantial question about defendant's intervening rights defense, plaintiff has not shown that it will suffer irreparable harm if defendant is allowed to sell its current inventory of allegedly infringing slides and stops. Plaintiff devotes little discussion to this issue but cites Robert Bosch LLC v. Pylon Manufacturing Corp., 659 F.3d 1142, 1151 (Fed. Cir. 2011) (emphasis added), for the proposition that "the existence of a two-party market *may* well serve as a substantial ground for granting an injunction." See also Douglas Dynamics, LLC v. Buyers Products Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). Without further explanation, plaintiff states that it will suffer irreparable harm should defendant be permitted to take plaintiff's market share. Dkt. #12 at 17.

These conclusory statements do not establish that plaintiff will suffer irreparable harm if this court does not issue an injunction. As the Court of Appeals for the Federal Circuit has held, "neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial." Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed. Cir. 1991). Because defendant seeks only to sell the products existing in its inventory just for the month or so remaining in bowfishing season, it is unlikely that plaintiff will lose a significant amount of additional market share between now and trial. Plaintiff also does not explain how defendant's small entry into the market for slides and stops has hurt or will hurt its reputation. More important, even if I concluded that plaintiff was likely to be harmed without an injunction, plaintiff would still have to show that damages would be unable to remedy that harm. Plaintiff has failed to discuss this issue in its briefs.

### C.  Balance of Harms and Public Interest

Having found that plaintiff has failed to establish that it is unlikely to succeed on the merits and suffer irreparable harm, I need not address the balance of harms or the public interest factors in this case. Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1353 (Fed. Cir. 2003); Amazon.com, 239 F.3d at 1350. In any event, plaintiff has not made a convincing case that either of these factors weigh in its favor, raising the same cursory arguments that I rejected above concerning its potential loss of market share and defendant's ability to design around the claims disclosed in the reexamination certificate.

ORDER

IT IS ORDERED that the motion for a preliminary injunction filed by plaintiff AMS, LLC, dkt. #11, is DENIED.

Entered this 11th day of June, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge